**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>      Plaintiffs,<br><br>vs.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>      Defendant, and<br><br>SPRING VALLEY WIND LLC,<br><br>      Defendant-Intervenor.<br>_____ | 3:11-cv-00053-HDM-VPC<br><br><br>ORDER |

    Defendant-Intervener Spring Valley Wind has filed a motion to strike extra-record declaration, or in the alternative, to supplement the record (#50). The motion relates to the declaration

1

of Merlin D. Tuttle (#30) submitted with plaintiffs' motion for temporary restraining order and/or preliminary injunction (#24). The declaration addresses the adequacy of the BLM's review of bat mortality risks related to wind energy developments and discusses the results of a 2010 bat mortality study conducted at the Texas Gulf Wind Facility. The data from the Texas Gulf Wind Facility study suggests a bat mortality rate higher than that proposed by the BLM for the Spring Valley Wind project.[1] Plaintiffs rely on this evidence for some of their arguments. The Texas Gulf Wind Facility data was finalized in January 2011 and was not before the BLM when it issued its decision in this case in October 2010.

Defendant Spring Valley Wind moves to strike the Tuttle Declaration on the basis that it is not part of the administrative record and advances new rationalizations for attacking the BLM's decision. Plaintffs have opposed the motion to strike arguing that the Tuttle Declaration falls under one of the four exceptions permitting judicial consideration of extra-record evidence when reviewing an agency decision (#57).

The general rule is that courts reviewing an agency decision are limited to the administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). This means that "[j]udicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in

---

[1] The Texas Gulf Wind data indicates a rate of 17 bats per turbine per year. While the BLM has set the mortality threshold for the Spring Valley Wind project at 2.56 bats per turbine per year.

the reviewing court." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).).

There are four exceptions to this general rule. District courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Lands Council*, 395 F.3d at 1030 (quoting *Southwest Ctr.*, 100 F.3d at 1450 (internal citation and quotation marks omitted).).

These exceptions should be narrowly construed and applied. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (holding that a reviewing court may require supplementation of the administrative record if it is incomplete). Federal courts should proceed "with the proper deference to agency processes, expertise, and decision-making." *Lands Council*, 395 F.3d at 1030.

Having reviewed the pleadings, documents and administrative record on file, and having considered argument from the parties at the hearing on March 24, 2011, the court hereby concludes and finds that the Tuttle Declaration does not fall within any of the four exceptions under which the court may consider extra-record evidence. First, the admission of extra-record evidence is not necessary to determine "whether the agency has considered all relevant factors and has explained its decision" in this case. *Id.* The administrative record indicates that the BLM reviewed 11 wind

projects in the western U.S. with habitats similar to Spring Valley. See Decision Record, Environmental Assessment, App. F, Avian and Bat Protection Plan 24.  Based on the bat mortality rates determined in these 11 studies, the BLM concluded that the bat mortality threshold for the Spring Valley Wind project would be 2.56 bats per turbine per year after taking into consideration the extensive mitigation measures to be implemented to ensure this threshold is not exceeded. *Id.*  One of the 11 studies considered is the Montana Judith Gap study, which presents a bat mortality rate approximately five times higher than that proposed in this case and similar to that indicated in the Texas Gulf Wind data.[2] *Id.*  The record also includes three published bat studies that acknowledge bat vulnerability to wind turbine mortality, either through barotrauma or collision. See e.g. Baerwald, et al, "Barotrauma is a Significant Cause of Bat Fatalities at Wind Turbines," (published 1/1/2008); Arnett, et al, "Effectiveness of Changing Wind Turbine Cut-in Speed to Reduce Bat Fatalities at Wind Facilities," 2008 Annual Report (published 4/1/2009);  Baerwald, et al, "A Large-Scale Mitigation Experiment to Reduce Bat Fatalities at Wind Energy Facilities," (published 2009).  Thus, the record before the court shows that the BLM reviewed numerous wind energy and bat related studies similar to the Texas Gulf Wind study and considered many factors relating to the risk of bat mortality at the Spring Valley Wind Facility.  The court should defer to the agency's expertise in evaluating this data.  In the context of this case, a

---

[2] The Judith Gap data indicates a mortality rate of 13.4 bats per turbine per year.

4

consideration of the Tuttle declaration would be an improper de novo review of the BLM's decision based solely on what may be a statistical anomaly or mere differences in expert opinions. *See Airport Cmtys Coal v. Graves*, 280 F. Supp. 2d 1207, 1213 (W.D. Wash. 2003).

Second, it is clear from the record before the court that the BLM has not relied on documents not in the record in reaching its decision in this case. *Lands Council*, 395 F.3d at 1030. Plaintiffs do not argue that the BLM has done so.

Third, the evidence in the Tuttle Declaration is not necessary to explain technical terms or complex subject matter. *Id.* While the subject matter of this case may be somewhat complex, the Tuttle Declaration does not consider any new issues or scientific evidence not already raised or addressed by the BLM and included in the administrative record and admissible exhibits already presented by the parties in this case.

Fourth, there is no showing of agency bad faith.

Accordingly, the court finds no extraordinary basis for considering the eleventh hour submission of the Tuttle Declaration by the plaintiffs. Therefore, the court hereby GRANTS defendant Spring Valley Wind's motion to strike (#50). The Tuttle Declaration (#30) is hereby STRICKEN. In addition, the court will not consider the Erickson Declaration submitted by defendant Spring Valley Wind in support of its motion to strike (#50-1) or the Second Tuttle Declaration submitted by plaintiffs in support of

their response in opposition to the motion to strike (#58).[3]

**IT IS SO ORDERED.**

DATED: This 28th day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

[3] While the court has determined that the Tuttle Declaration is not admissible in these proceedings, the court did, during the hearing on the plaintiffs' application for the injunction, urge the BLM, upon appropriate application by the plaintiffs, to consider the impact of the Texas Gulf Wind study might have, if any, on the mitigation measures set forth in the EA.

6